UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN HAWKINS and UNITED STATES FILTER CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>DEBASISH MUKHOPADHYAY,<br><br>Defendant. | 04MBD 10110<br><br>Civil Action No. CV-03-0402 MV (LFG)<br>Pending in the U.S. District Court for<br>the District of New Mexico |

**PLAINTIFFS STEVEN HAWKINS AND UNITED STATES FILTER CORPORATION'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO ENFORCE SUBPOENA DUCES TECUM AND TO COMPEL PRODUCTION OF DOCUMENTS BY IONICS, INCORPORATED**

INTRODUCTION

This is an action filed in the U.S. District Court for the District of New Mexico for correction of inventorship of U.S. Patent Nos. 5,925,255 and 6,537,456 (the "Patents") pursuant to 35 U.S.C. § 116.[1] The complaint alleges that the Patents erroneously name the defendant Debasish Mukhopadhyay as their sole inventor when, in fact, the plaintiff Steven Hawkins also made substantial contributions to the claimed invention. Mr. Hawkins and the plaintiff United States Filter Corporation ("U.S. Filter") seek quantum merit and/or unjust enrichment damages because, *inter alia*, (1) Mr. Mukhopadhyay's failure to name Mr. Hawkins as an inventor has denied U.S. Filter a property right to which it was entitled under the patents beginning from the date of their issuance; (2) Mr. Mukhopadhyay has provided multiple companies with a license to

---

[1] A copy of the complaint is attached hereto as Exhibit 1.

his patents, including Ionics, Incorporated ("Ionics"), and he has received compensation and the right to future compensation in return.

On February 2, 2004, counsel for the plaintiffs issued a subpoena duces tecum to Ionics. Although counsel for the plaintiffs has agreed to narrow substantially the production sought by the subpoena, Ionics still refuses to produce any documents. The documents sought by counsel for the plaintiffs concern: (1) Ionics' licensing of the patents-in-suit and payments to the defendant in connection therewith; and (2) the genesis and development of the process that is the subject of the Patents. Both categories of documents are indisputably relevant to the claims of the plaintiffs in the underlying action. Ionics' licensing of the patents-in-suit from the defendant is relevant to the calculation of the damages sought by the plaintiffs. The genesis and development of the process that is the subject of the patents-in-suit is critical to the core issue of inventorship. For these and the reasons set forth below, the plaintiffs respectfully request an order compelling Ionics to produce the requested documents.

## BACKGROUND

On February 2, 2004, counsel for the plaintiffs served a subpoena duces tecum upon Ionics, a Massachusetts corporation with its principal place of business in Watertown, Massachusetts.[2] The subpoena sought documents relating to, *inter alia*: (1) Ionics' licensing of the Patents, and the revenues generated by such licensing (*Ex. 2*, Requests 2 and 3); and (2) the genesis and development of the process that is the subject of the Patents (*Ex. 2*, Requests 1 and 4).

In particular, with respect to the licensing of the Patents, the subpoena sought documents relating to:

---

[2] A copy of the subpoena is attached as Exhibit 2.

-2-

- Document Request 2: "licenses, or negotiations for licenses, under the '255 or '456 patents."

- Document Request 3: "payments or other forms of consideration paid by Ionics for a license under the '255 and/or '456 Patents."

With respect to the genesis and development of the process that is the subject of the patents-in suit, the subpoena sought documents relating to:

- Document Request 1: "communications with Debasish Mukhopadhyay, or his representatives, regarding U.S. Patent Nos. 6,537,456 (the "'456 Patent") or 5,925,255 (the "'255 Patent")."

- Document Request 4: "the '255 or '456 Patents."

On February 12, 2004, Ionics responded to the subpoena asserting, without authority, that a one-month stay of discovery in the underlying case rendered the subpoena ineffective.[3] (*Ex. 3*, February 12, 2004 letter from Mr. Milligan to Mr. Summersgill.) The next day, counsel for the plaintiffs responded by noting that subpoenas remain effective until vacated or discharged by the court[4] and that the plaintiffs expected Ionics to produce the requested documents. Counsel for the plaintiffs granted Ionics an extension until March 8, 2004, five weeks from the service of the subpoena, to produce the requested documents. (*Ex. 4*, February 13, 2004 letter from Ms. Aubry to Mr. Milligan.)

On March 5, 2004, counsel for Ionics sent a second letter to counsel for the plaintiffs, asserting that the requested documents were "clearly irrelevant" and an "obvious ploy to obtain very sensitive market and commercial information." (*Ex. 5*, March 5, 2004 letter from Mr. Milligan to Mr. Summersgill.) Counsel for Ionics also

---

[3]   The stay was imposed at the request of the parties to permit an opportunity for mediation.

[4]   *See Waste Conversion, Inc. v. Rollins Env't Servs., Inc.*, 893 F.2d 605, 606-07 (3d Cir. 1990) (subpoena remains effective until the court grants a motion to quash the subpoena under Rule 45.)

suggested that the requested documents are more easily available from the defendant himself. The defendant, however, has not produced the documents that the plaintiffs have sought from Ionics and claims that such documents are not in his possession. The defendant does admit to possessing the licensing agreements, but he refuses to produce them *at Ionics' instruction*.

Counsel for the plaintiffs then attempted to contact Ionics' counsel and left multiple voicemail messages. Receiving no response, on March 29, 2004, counsel for the plaintiffs sent a second letter to Ionics' counsel explaining the relevance of the requested documents (to the issues of inventorship and damages) and that the protective order would fully protect Ionics from disclosure of any confidential information.[5] (*Ex. 7*, March 29, 2004 letter from Mr. Summersgill to Mr. Milligan.)

On April 1, 2004, counsel for Ionics asked to schedule a conference pursuant to Rule 7.1. (*Ex. 8*, April 1, 2004 letter from Mr. Milligan to Mr. Summersgill.) As a result, counsel for the plaintiffs again attempted to contact Ionics' counsel and left multiple voicemail messages. Receiving no response, counsel for U.S. Filter sent Ionics' counsel a letter explaining that without a promise to produce, U.S. Filter would be left with no choice but to file a motion to compel. (*Ex. 9*, April 8, 2004 letter from Ms. Aubry to Mr. Milligan.)

On the night of April 8, counsel for Ionics finally called plaintiffs' counsel. During that conversation, plaintiffs' counsel confirmed that in an effort to minimize any burden on Ionics, the plaintiffs would be willing to narrow the production sought by the subpoena to simply: (1) the license agreements between Ionics and Mr. Mukhopadhyay;

---

[5]   A copy of the protective order is attached hereto as Exhibit 6. Under the protective order, no one at U.S. Filter other than Mr. Hawkins may see documents designated as confidential.

(2) documents sufficient to show any payments made by Ionics to Mr. Mukhopadhyay; and (3) documents relating to Mr. Mukhopadhyay's communications regarding the genesis and development of the process claimed in the patents-in-suit. (*Ex. 10*, April 9, 2004 letter from Ms. Aubry to Mr. Milligan.) Despite this proposal, Ionics' counsel offered no commitment to produce any documents.

More than two months have now passed since the service of the subpoena and more than one month has passed since the expiration of the discovery stay. U.S. Filter has previously had litigation against Ionics in this district. Ionics' stonewalling conduct here is frankly reminiscent of the "egregious" discovery misconduct for which Ionics received "severe sanctions" from Judge Keeton in *United States Filter Corporation v. Ionics Inc.*, 128 F. Supp.2d 56 (D. Mass. 2001), a copy of which is attached as Exhibit 11.

## ARGUMENT

### I. THE LICENSING AGREEMENTS SOUGHT BY THE SUBPOENA ARE RELEVANT TO THE CALCULATION OF DAMAGES IN THE UNDERLYING ACTION.

The defendant's licensing of the patents-in-suit, and the revenues generated by such licensing, are indisputably relevant to plaintiffs' claims for damages. Ionics has never disputed that.

As a general matter, it is well settled that licenses, and documents relating to the negotiation of such licenses, are relevant to the determination of damages in patent cases. *See Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) ("[t]he royalties received by the patentee for the licensing of the patent in suit" and "the nature and scope of the license" are relevant to the damages determination).

-5-

More specifically, license agreements are relevant to the damages an inventor may claim as a result of the failure to list the inventor on the patent. The defendant's licenses here will reveal the past and future value of the Patents. The license agreements will reveal the term and scope of the licenses, any royalty or lump sum payments made, and any other consideration, such as patent licenses for other intellectual property, given in exchange for the license grant. As a result, courts have routinely required the production of such licenses. *See, e.g., Chou v. Univ. of Chicago*, 254 F.3d 1347, 1359-60 (Fed. Cir. 2001) (examining license agreements to determine economic stake in named inventor's licensing revenue); *Applied Med. Res. Corp. v. United States Surgical Corp.*, 967 F. Supp. 867, 869 (E.D. Va. 1997) (examining licensing agreements in analysis of inventorship).

Similarly, documents relating to the negotiation of such licenses, or offers to prospective licensees, are relevant to the damages determination. Documents relating to the negotiation of the licenses may reveal the amounts the defendant has received and will receive in the future. Documents relating to offers to prospective licensees may show the capacity of the Patents to generate further profits in the future, resulting in a commensurate increase in the damages to which plaintiffs would be entitled to claim. As a result, courts have again routinely ordered the production of such documents. *See Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 561 (N.D. Cal. 2003) (compelling plaintiff to produce patent license agreements and documents relating to any proposed license agreements because such information is relevant to the damages determination); *Unisplay, S.A. v. American Elec. Sign, Co., Inc.*, 69 F.3d 512, 517-19 (Fed. Cir. 1995) (holding that evidence of the patentee's prior licensing proposals and actual licenses with third parties "should carry considerable weight in calculating a reasonable royalty rate.").

Finally, documents revealing the actual revenues generated by the defendant's licensing of the patents, such as financial reports or records of payments received, are also relevant. Plaintiffs' damages claim will constitute some portion of these revenues and therefore cannot be calculated without defendant's disclosure of this information. *See Beatty Safway Scaffold Co. v. Up-Right, Inc.*, 306 F.2d 626, 632 (9th Cir. 1962) (affirming damages award based on royalties paid according to license agreement).

## II. THE GENESIS AND DEVELOPMENT OF THE PROCESS THAT IS THE SUBJECT OF THE PATENTS ARE RELEVANT TO THE CENTRAL ISSUE IN THE CASE OF INVENTORSHIP.

The genesis and development of the process that is the subject of the Patents are central to the core issue in the underlying litigation of inventorship. Once again, Ionics has never disputed that. Indeed, it is well settled that to be an inventor, an individual must make a contribution to the invention. *See Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("compar[ing] the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim to then determine whether the correct inventors were named"). In an inventorship case, discovery about each inventor's contribution is routinely permitted and there is no reason why it should not also be permitted here. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1463-64 (Fed. Cir. 1998) (comparing named inventor's contribution and claimed inventor's contribution to the patents-in-suit.)

## CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that the Court order Ionics to produce documents in its possession, custody or control relating to the licensing of the patents-in-suit and the genesis and development of the process that is the subject of the patents.

        STEVEN HAWKINS and
        UNITED STATES FILTER CORPORATION

        By their attorneys,

        _____
        William F. Lee (BBO #291960)
        Mark D. Selwyn (BBO #565595)
        Michael A. Diener (BBO #558887)
        Michael J. Summersgill (BBO #632816)
        Hale and Dorr LLP
        60 State Street
        Boston, Massachusetts 02109
        Telephone: (617) 526-6000

OF COUNSEL:

William C. Madison
Madison, Harbour, Mroz & Brennan P.A.
P.O. Box 25467
Albuquerque, New Mexico 87125-5467
Telephone: (505) 242-2177

Dated: April 13, 2004

## CERTIFICATE OF SERVICE

    I, Alison R. Aubry, hereby certify that the foregoing document was served this 13th day of April 2004 via hand delivery upon counsel for Ionics, Paul T. Milligan, Esquire, Nelson Kinder Mosseau & Saturley, 45 Milk Street, 5th Floor, Boston, Massachusetts, 02109, and via facsimile and first-class mail upon counsel for defendant, Frank Frisenda, Frisenda, Quinton and Nicholson, 11601 Wilshire Boulevard, Suite 500, Los Angeles, California, 90025.

        _____
        Alison R. Aubry